FLOR GONZÁLEZ, Appellant, *v.* REGISTRAR OF PROPERTY OF BAYAMÓN, Respondent.

No. 1232. Submitted July 6, 1948.—Decided July 6, 1948.

*Benigno Dávila* for appellant. The Registrar appeared by brief.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

On August 22, 1947 the Assembly and the Mayor of the Municipality of Toa Baja approved an ordinance which textually reads thus:

"WHEREAS: Don Flor González, of legal age, married to Constancia Maldonado, employee and resident of Toa Baja, P. R., has filed a petition for the usufruct of the following lot: (it is described)

"WHEREAS: The aforesaid Flor González has a concrete house erected on said lot;

"WHEREAS: Since it appears from the record and from the Registry of Property of San Juan, now of Bayamón, at folio 47 back of volume 8, Property No. 338, fourth entry, that the use of this lot was granted or conveyed to Abdón Nevárez Ayala, of legal age, employee, widower, I mean married to Julia Santiago, both now deceased, this Municipal Assembly of the Municipality of Toa Baja, Puerto Rico, proceeded, pursuant to Sec-

tion 70 of the Municipal Law now in force, to summon the grantee to appear before the Assembly in defense of his right and give his reasons why his right to the usufruct of said lot should not be cancelled, and after hearing the parties it was found that the aforesaid Abdón Nevárez Ayala and his wife had in turn granted the use of the lot to third persons, and that the wooden buildings which stood thereon no longer exist because they have been destroyed and disappeared in the course of years by reason of cyclones, and that instead, Flor González, petitioner herein, has erected a new concrete building thereon, for which reason in the meeting held for that purpose the former concession granted to Abdón Nevárez Ayala was cancelled by this Municipal Assembly, and the use of the lot was granted to Flor González, who is now in possession thereof.

WHEREAS: The former grantees mentioned above were summoned on July 15, 1947 to appear at the special meeting held by the Municipal Assembly of Toa Baja on this 22nd day of August, 1947 for this and other purposes where evidence was presented to prove the aforesaid facts;

THEREFORE: Be it decreed by the Municipal Assembly of Toa Baja, Puerto Rico;

"1. To cancel, as it does hereby cancel, the concession of the lot described in this ordinance in favor of the former owners Abdón Nevárez Ayala and his assignees, and,

"2. To grant, as it does hereby grant, in perpetuity to Flor González, the usufruct of said lot on condition that he, as well as his successors in interest, shall always maintain in good sanitary condition the buildings now standing thereon or that might hereafter be erected on the aforesaid lot.

"3. That this ordinance being of an urgent character, shall take effect immediately upon its becoming final, if none of the parties appeal to the proper district court to review the resolution adopted, that is, within 30 days after this day when this decision is notified to the parties.

"4. That all ordinances or part of any other ordinance in conflict herewith are hereby repealed."

In the certificate of the ordinance issued by the Secretary-Auditor of said Municipality on February 26, 1948 the following was stated:

"That the foregoing is a true and faithful copy of the ordinance of the concession of lot approved by the Municipal Assem-

bly of Toa Baja, P. R., in its special meeting held on August 22, 1947, all the members being present and unanimously approving said ordinance which was also approved by the Major on that same day; and I also CERTIFY that this ordinance is final because the interested parties have failed to take any appeal to the proper district court and at the request of the interested party I issue these present under my hand and seal of this Municipality, at Toa Baja, P. R., on February 26, 1948."

On February 10, 1948 Flor González executed a deed of construction before Notary Benigno Dávila wherein he stated that he was the owner of a concrete house which he described, situated in the lot of the Municipality of Toa Baja, described in the aforesaid ordinance; that he had erected said house in 1945 at a cost of one thousand five hundred dollars, which price should be recorded in the registry of property, for which purpose he would attach a certified copy of said ordinance, it being stated by the notary that he had it before him on executing the deed.

When the deed and the certified copy of the ordinance were presented to the Acting Registrar of Property of Bayamón, the latter denied record of the deed "because the lot on which it is alleged the building was erected contains, according to the Registry, a house whose ownership is recorded in favor of Abdón Nevárez Ayala married to Julia Santiago, and there is no showing that the latter has conveyed it to any person for which reason he enters a cautionary notice . . .; and of the ordinance "because the aforesaid lot is being occupied by a house which according to the registry is recorded in favor of Abdón Nevárez Ayala."

Feeling aggrieved by this decision, Flor González took the present administrative appeal.

The only ground alleged by the registrar in his brief to sustain his note is as follows:

"That it does not appear from the Registry that said Abdón Nevárez Ayala or his successors or legal representatives have given this consent to the cancellation of the usufructuary right in said lot, nor to the registration of the ownership of the house

erected on said lot; as provided by §§ 82 and 83 of the Mortgage Law, which establish the procedure to be followed in the present case, concomitant to § 132 of the Regulations for the execution of the Mortgage Law. *Del Toro* v. *Registrar,* 55 P.R.R. 879.''

In our opinion § 83 of the Mortgage Law is not applicable to this case for it refers in its first two paragraphs to records or entries made by virtue of an order of a court and in the last paragraph to those made by virtue of a public instrument where the party prejudiced by the cancellation does not agree thereto. Yet, in our opinion, paragraphs 1 and 2 of § 79 of the Mortgage Law, as amended by Act No. 18 of July 9, 1936 (Spec. Sess. Laws, p. 144) are applicable inasmuch as they provide insofar as pertinent, that ''A total cancellation may be demanded and must be ordered in the proper case: 1. When the real property the subject of the record is entirely extinguished; 2. When the recorded right is also completely extinguished''; and § 131 of the Regulations provides that ''Real property which is the subject of a record shall be considered extinguished for the purposes of subdivision 1 of article 79 of the law, whenever it disappears by reason of any natural accident, whether ordinary or extraordinary, as by the force of rivers, the change of their beds, *the collapse of buildings erected on ground belonging to another,*[1] or other similar events.'' (Italics ours.)

The second paragraph of § 132 of the Mortgage Regulations provides that ''When the recorded property right also ceases to exist, either by a provision of the law, as in the case of a statutory mortgage when the reason therefor ceases to exist, or as a natural effect of the contract which may be the subject of the record, as in the case of a mortgage when the mortgagor pays his debt, in a rent charge when the per-

---

[1] The case at bar involves two separate recorded rights, the lot and the building, the former belonging to the Municipality and the latter to the grantee. *Cf. Jiménez* v. *Registrar,* 62 P.R.R. 335, 339.

son paying it redeems the same, in a lease upon the expiration of the term thereof, and *in other similar cases.*" (Italics ours.)

 We have decided in *Casanovas et al v. Municipality of Mayagüez et al.,* 31 P.R.R. 267 and *Municipality of Guánica v. García,* 48 P.R.R. 797, that the forfeiture of a grant of municipal lots is governed by the law in force at the time the forfeiture is enforced. When the Municipal Assembly of Toa Baja began the forfeiture proceedings in this case the municipal law in force was No. 53 of April 28, 1928, § 70 of which provides in its fifth paragraph:

"When the municipal assembly believes that it must consider the question of the forfeiture of one of these concessions, the grantee shall be summoned at least thirty (30) days in advance so that he may appear before the assembly in defense of his right, at a meeting to be held for the purpose. Upon hearing the interested party, the assembly shall decide, pursuant to law and in accordance with the evidence presented; and the resolution adopted shall be final unless the grantee appears, within thirty days after he has been notified of the decision, and files the proper action before the district court of the district to which the municipality belongs; and after the case has again been heard in said court, its decision shall be final."

The Municipal Assembly of Toa Baja, in approving the above-copied ordinance followed the procedure established by law, for it appears therefrom that it summoned the former grantee Abdón Nevárez Ayala and his successors, thirty days in advance, as well as the petitioner, to appear at the special meeting held on August 22, 1947 to defend their rights; that they appeared; that it was proven that the wooden construction which formerly existed on the lot had been destroyed and had disappeared in the course of time and by reason of the cyclones; that the petitioner had constructed a concrete house on the same lot; that this was all supported by the evidence introduced and consequently the Municipal Assembly cancelled the concession of the lot granted to Abdón Nevárez Ayala and his assignees and granted the usufruct of

said lot to petitioner Flor González on certain terms. It also appears from the certificate of the Secretary-Auditor of Toa Baja of February 26, 1948, that said ordinance is final because the parties have not appealed to the proper district court within thirty days after having been notified of the decision of the Assembly, which was so notified on August 22, 1947.

Morell, in his commentaries on *Legislación Hipotecaria*, vol. 3, pages 381, 382 and 405, when referring to § 79, No. 1 of the Mortgage Law, *supra*, says:

"Real property which is subject of record shall be considered extinguished, according to Section 66 of the former Regulation, whenever it entirely disappears by reason of any natural accident, whether ordinary or extraordinary, as by force of rivers, the change of their beds, the collapse of buildings erected on land belonging to another, earthquakes or other similar events.[2]

"The total extinction according to the law, of the real property which is the subject of the recordable rights, produces, at least, the extinction of the very right which was asserted on said property. The law solely refers in the words 'similar events' to *natural* accidents, whether ordinary or extraordinary. This is in effect the most rational. The will of man can hardly totally extinguish real property; but if the subject of the right is a building independent of the lot, it may then be extinguished by the hand of man and once the subject is extinguished the right ceases. Besides there are other causes foreign to the nature and the will such as eminent domain on the ground of public utility.

\* \* \* \* \* \* \*

"*Total extinction.—The total extinction* of the property on which all recordable rights ultimately fall, is a very rare case and if it should occur by reason of an earthquake, the force of rivers, the change of their beds, etc., according to Section 66 of the aforesaid regulation, no one would be interested in presenting the documents warranting the catastrophe, inasmuch as such a justification would involve unnecessary expenses, it being obvious that whether or not the record were cancelled, *no right could possibly exist thereon any longer.* Section 149 of the regu-

---

[2] Section 66 of the former Regulation mentioned above is almost similar to § 131 of our Regulation, *supra*.

lation, in case it should ever occur, provides that the extinction of the property shall be established by documents presented in the registry to justify such a rare fact." (Italics ours.)

Section 149 of the Regulations [3] to which Morell refers does not exist in our Mortgage Regulations except its second paragraph which is § 133 of our Regulations.

Since our statute does not require the presentation in the registry of the documents referred to in § 149 of the Spanish Regulation, *supra*, what more could the registrar require in this case than the administrative decision adopted by the Municipal Assembly, according to the evidence presented before it, as to the extinction of the building erected on the lot of the municipality by the former grantee, after he and his assignees were summoned and which decision upon their failure to appeal therefrom to the proper district court became final? The registrar had nothing before him which contradicted the veracity of the facts set forth in the ordinance and pursuant to § 70 of the Municipal Law, *supra*, the forfeiture of the grant of the usufruct of the lot to the person in whose favor it was recorded in the registry became final upon his failure to appeal as provided by law.

The order of the court which the registrar deems necessary before ordering the cancellation is not required in this special case for it has been substituted by the administrative decision of the municipality duly authorized by § 70 of the Municipal Law in force. But furthermore, under that very § 70 the parties are authorized to resort to the court before the administrative decision should become final; but

---

[3] "Art. 149. Total cancellation of the records and cautionary notices shall be made in the cases mentioned in Section 79 of the Law, on presentation in the Registry of titles or documents which establish the extinction of the property or right or on the declaration of nullity of the title recorded or of the record itself.

"Cancellations which may be made as a consequence of recorded instruments being held to be void, shall produce their effects without prejudice to the provisions of article 34 of the law.

"These provisions are likewise applicable to partial cancellations whenever they lie."

in this case the party who might have been prejudiced by the action of the Municipal Assembly failed to do so.

In commenting on "Cancellations of entries by virtue of an Administrative Decision" Barrachina in his *Derecho Hipotecario y Notarial,* vol. 2, page 329, says:

"Virtually they are contained in Section 82 when it says: 'Cancellations shall be made on authentic documents', which are those issued by the Government or its *legal representatives* pursuant to Section 3, and also on administrative decisions which in this respect are *equivalent,* as we have seen, to an order of a court." (Italics ours.)

And Morell in the aforesaid volume on page 403, says:

"There are cases where the mere lapse of a term, the confusion or consolidation of rights, or other causes, produces the extinction by merely requesting that it be so stated, or by establishing the fact without even a petition therefor. But other cases, more numerous, require certain documents on which to make that extinction, as in the case of death or by the performance or nonperformance of conditions, by *extinction wholly or partly, of the property,* the crop or the building, or because a statutory provision exists by virtue of which *the right ceases: but which requires the establishment of certain specific facts,* or a judicial or *administrative* decision." (Italics ours.)

Since the concession of the usufruct of the lot has lapsed and it has been granted to the petitioner by the proper authority, and since the extinction of the property subject of the former record has been established and since the construction of the building erected on said lot by the petitioner in 1945 was stated in a public instrument, the cancellation and recordation sought should have been ordered and, to that effect, the decisions appealed from are reversed.